Ronald Steinvurzel, Esq.
Steinvurzel & Levy Law Group
*Attorneys for Plaintiff*
34 S. Broadway, Suite 210
White Plains, NY 10601
P:  (914) 288-0102
E:  rsteinvurzel@steinlevy.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RED'S CRIB LLC, | Case No.24-6548 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| AMERICAN TWO INC., ANGEL RICHARD ARGUELLO, JOHN DOE COMPANIES 1-10, JOHN DOES 1-10, and JANE DOES 1-10, | **DEMAND FOR TRIAL BY JURY** |
| Defendants. | |

This is an action for contribution towards the costs of investigating and remediating subsurface contamination as authorized by 42 U.S.C. § 9613(f)(3)(B), New York State Environmental Conservation Law ("ECL") § 27-1421, and 6 N.Y.C.R.R. § 375-1.5(b)(5). Plaintiff, Red's Crib LLC ("Red"), for its Complaint against the captioned defendants (collectively, the "Defendants"), alleges as follows:

## BACKGROUND

1. In October 2019 Cynthia Gray ("Gray"), the sole member of Red purchased the property know as 43-45 Lafayette Avenue in the Village of Suffern, Rockland County, New York (the "Site") in a mixed commercial and residential area. The Site is approximately 0.09 acres with a one-story concrete block structure divided into two suites (the "Building").

2. In February 2020 Gray transferred the Site to Red and properly recorded such deed with the County of Rockland.

3. The Building has a basement with a sump pump system. The Building has two spaces: 43 Lafayette Avenue ("43 Lafayette") which, until shortly after Red's acquisition, was the home, for at least 20 years, to a dry cleaning establishment that utilized Tetrachloroethene (PERC) as a solvent in the dry cleaning process; and 45 Lafayette Avenue, occupied by a tenant operating a wellness program.

4. For a period of years preceding Gray's purchase of the Site, 43 Lafayette was occupied by defendant American Two Inc., which, upon information and belief, did business under the name "Amerian Two Cleaners" (hereinafter American Two Inc. and American Two Cleaners shall be collectively referred to as "ATC"). ATC is still an active domestic corporation in the State of New York.

5. Upon information and belief, defendant Angel Richard Arguello ("Arguello") is the sole shareholder of ATC.

6. Neither Gray nor Red have ever owned or operated a dry cleaning establishment.

7. Defendants John Doe Companies are one or more corporations or other business entities whose identity and address is not known at this time, but who upon information and belief are "owners," and/or "operators" and/or "arrangers" who participated in or arranged for the transport of hazardous substances to or from the Site, and/or disposed of, or released hazardous substances in, at or under the Site, which hazardous substances impacted the Site.

8. Defendants John Does and Defendants Jane Does are one or more individuals whose identity and address is not known at this time, but who are "owners," and/or "operators" and/or "arrangers" who participated in or arranged for the transport of hazardous substances to or

2

from the Site, and/or disposed of, or released hazardous substances in, at or under the Site, which hazardous substances impacted the Site.

9. Upon identification of any such John/Jane Does and John Doe Companies (together the "Does"), Red intends to seek to amend this Complaint accordingly.

10. On June 19, 2020 ATC ceased operations at the Site and filed a PERC Dry-Cleaning Facility Notice of Equipment Shutdown (received by the New York State Department of Environmental Protection ("DEC") on July 4, 2020). Gray, on behalf of Red, directed Arguello to have the dry cleaning equipment removed from the Building and Arguello did so.

11. Shortly thereafter, Gray detected an odor emanating from the basement of the Building.

12. Vapor intrusion investigation activities were completed on August 11, 2020 by Environmental Consulting & Management Services, Inc. ("ECMS") and EnviroSure Inc. ("EnviroSure") on September 15, 2020.

13. As noted in the January 11, 2021 Limited Vapor Intrusion Assessment report (January 2021 Report), EnviroSure concluded that vapor intrusion was a concern for the Site due to PCE and trichloroethylene ("TCE") concentrations in sub-slab soil vapors and indoor air greater than the applicable NYSDOH Indoor Air Concentrations Due to Health Exposures Screening Value.

14. The DEC Spill Hotline was notified on September 9, 2020 of the release from the historical dry cleaning operations at the Site. The DEC issued Spill No. 2005272 for the case and Red voluntarily applied to the New York State Brownfield Cleanup Program.

15. The DEC and Red entered a Brownfield Cleanup Agreement dated September 1, 2021 (the "BCA") resolving Red's liabilities with the State of New York as contemplated by 42

U.S.C. § 9613(f)(3)(B), New York State Environmental Conservation Law ("ECL") § 27-1421, and 6 N.Y.C.R.R. § 375-1.5(b)(5).

16. EnviroSure conducted a Remedial Investigation ("RI") to determine the existence, nature and extent of contamination in soil, groundwater, and soil vapor. The RI was performed from January 6, 2022, through July 8, 2022.

17. ECMS performed a Supplemental Remedial Investigation from June 26, 2023, through July 31, 2023.

18. On August 24, 2022, Badey & Watson Surveying & Engineering, D.P.C. (B&W) conducted a monitoring well survey to obtain the elevation data of the wells.

19. On April 14, 2022, a vapor intrusion and indoor air investigation was conducted in an attempt to further investigate the elevated concentrations of VOCs previously detected in the sub-slab soil vapor and indoor air samples collected at the Site.

20. On July 8, 2022, four concrete chip samples (C-01 through C-04) were collected from the basement slab near the locations of the basement sub-slab soil vapor and indoor air samples that were previously collected. Samples C-01, C-03, and C-04 were collected near the locations of sub-slab soil vapor samples SS-03, SS-05, and SS-04, respectively, and sample C-02 was collected near the location of indoor air sample IA-04.

21. The target contaminants at the Site are PCE and its breakdown compounds (TCE and C-1,2-DCE) with impacts to soil vapor and indoor air.

22. The origin of the PCE, TCE, and C-1,2-DCE contamination in the sub-slab vapors are attributed to the former dry-cleaning operations.

23. The target contaminants were not identified in soil or groundwater, therefore delineation in these media is complete and the potential for off-site migration is minimal.

24. Limited concentrations of SVOCs, metals, and PFAS were detected in soil and groundwater, and their origin is unknown based on the historical Site operations. The source is likely historical fill material, and/or an off-site or naturally occurring source. These non-target contaminants may represent an area-wide or regional condition. Migration of these non-target contaminants across the Site may be minimal due to the nature of the contaminants and extensive low-permeable ground cover.

25. Characterization of the surface and subsurface at the Site has been completed, including topography, depth to groundwater, and the quality of the shallow aquifer.

26. The objective of the ECMS Supplemental RI was to determine the nature and extent of contamination in soil and groundwater as EnviroSure could not find a source of contaminants.

27. A summary of the environmental findings from the June 26, 2023, through July 31, 2023 ECMS Supplemental RI is as follows:

    a. On July 24, 2023, a water/oil interface level meter was used to determine the depth to groundwater, which was identified at approximately 26.78 feet bgs in MW-1, 25.55 feet bgs in MW-2, and 27.75 feet bgs in MW-3. The groundwater flow Direction was confirmed to be to the South-Southwest towards the Ramapo River.

    b. On July 24, 2023, ECMS collected four groundwater samples from the site from MW-1 through MW-3 plus groundwater that accumulated in the basement sump. Groundwater analytical results from the monitoring wells showed no exceedances above DEC Groundwater Quality Standards (GQS). The groundwater in contact with the impacted soils showed elevated groundwater concentrations of PCE, C-1,2-DCE, TCE, and Vinyl chloride (VC) above GQS. Due to the perched nature of the water in the sump it has not reached the wells MW-2 or MW-3. They are both within 10 ft laterally of the sump.

      c. On July 24, 2023, and July 31, 2023, five samples exceeded Unrestricted Use Soil Cleanup Objectives (UUSCOs). SB-A SUMP W (1`), SB-A SUMP H (3.0`), SB-A SUMP B (4.0`), SB-A #1 (26``-32``), and SB-A #1 (42``-59``). All exceeded PCE UUSCO of 1,300 ug/Kg. Two samples SB-A SUMP W (1`) and SB-A #1 (42``-59``) exceeded the C-1,2-DCE UUSCO of 250 ug/Kg. The remainder of SB-A had detections of C-1,2-DCE and TCE. However, due to the Source of PCE solvent in SB-A SUMP H (3.0`) C-1,2-DCE and TCE were "not detected" above the method detection limits due to the laboratory dilutions to achieve a reportable result.

      d. As part of the Supplemental RI, ECMS was able to determine the lateral and horizontal extent of contamination from PCE solvents that were formerly used at the site. The areas that are affected are strictly in the basement surrounding the sump. The groundwater table beneath the site has not been affected due to the tight silt and clay stratigraphy at the site. Only the soil vapor and indoor air have been affected.

      e. ECMS was able to determine the lateral and horizontal extent of contamination from PCE solvents that were formerly used at the site. The areas that are affected are strictly in the basement surrounding the sump. The groundwater table beneath the site has not been affected due to the tight silt and clay stratigraphy at the site.

    28. The remedy proposed by ECMS is to break up and remove the concrete slab of the basement; implementation of pollution and sediment control measures; removal of the existing loose concrete cover and miscellaneous debris/soils in the excavation area of removal; excavation around the basement sump via Vactor® soil vacuum truck or similar equipment, stockpiling, off-Site transport, and disposal of approximately 20-40 cubic yards of material; collection and analysis of post-excavation end-point confirmation soil samples from the excavation base and, to the extent

possible, sidewalls of the excavation, to document post-excavation conditions, implementation of a preliminary waste characterization to facilitate off-Site disposal of excavated soil/fill; screening for indications of contamination (by visual means, odor, and PID readings) of excavated material during intrusive site work; localized dewatering of perched groundwaters with containerization, classification, and disposal at an approved receiving facility; off-site disposal of material removed from the Site; installation of a demarcation layer indicating the top of residual soils/extent of excavation with plastic sheeting and/or orange construction fencing; backfilling of excavated areas, as necessary, with certified-clean material, recycled concrete aggregate, or virgin, native crushed stone; installation of a 4-inch PVC riser pipe stub in the excavated area for future soil vapor mitigation, lining of the excavated area with a vapor barrier, and replacement of the concrete slab; installation of sub-slab soil vapor points and completion of a soil vapor evaluation following remedial excavation activities and prior to occupancy; based on the soil vapor evaluation, preparation of an Interim Remedial Measure Work Plan for the design and installation of a soil vapor mitigation alternative, if necessary; potential soil vapor mitigation alternatives include, but not are limited to, construction and activation of a sub-slab depressurization system from the capped riser pipe and application of an interior vapor intrusion coating on the basement floor slab and walls; preparing and implementing a post-remediation groundwater monitoring program to evaluate the groundwater after source removal.

29. Potential/contingent remedial elements include the establishment of a DEC-approved plan to ensure long-term management of engineering (waterproofing/vapor barrier, and cover system) and institutional controls (Environmental Easement, to prevent use of site for gardening, groundwater), including the performance of periodic inspections and certification that

the controls are performing as they were intended; and recording of an Environmental Easement to ensure future owners of the site maintain the required engineering/institutional controls.

30. Red has incurred over $100,000 in costs in the investigation of the contamination caused by Defendants.

**JURISDICTION AND VENUE**

31. The Court has jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b). The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367 because the federal and state claims arise from a common nucleus of operative facts.

32. Venue is proper in this district under 28 U.S. § 1391(b) and 42 U.S.C.§ 9613(b) because the alleged releases and/or threatened releases occurred in this district.

**COUNT ONE**
**(Contribution Under CERCLA § 113(f))**

33. Red incorporates the allegations in the preceding paragraphs by reference, as if set forth herein at length.

34. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, *inter alia*, that:

> (1) the owner and operator of a vessel or a facility,
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances … shall be liable for –
> ***
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan ….

8

35. Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), provides, *inter alia*, that:

> (1) Contribution
> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

36. The Site is a "facility" within the meaning of 42 U.S.C. § 9601(9).

37. The Defendants are each a "person" as defined in 42 U.S.C. § 9601(21).

38. Upon information and belief, the Defendants, were "owners," and/or "operators" of the Site or were "arrangers" within the meaning of §§ 101 and 107(a) of CERCLA, 42 U.S.C. §§ 9601(20), 9607(a), relating to the hazardous substances disposed of, released at, and/or impacting the Site.

39. The BCA resolved Red's liabilities with the State of New York as contemplated by 42 U.S.C. § 9613(f)(3)(B), ECL § 27-1421, and 6 N.Y.C.R.R. § 375-1.5(b)(5). As such, Red is entitled to contribution from the Defendants for each of their equitable shares of the response costs, including each Defendants' equitable share of any orphan share of the response costs.

40. Red demands contribution against the Defendants pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f).

## COUNT TWO
**(Declaratory Relief Under CERCLA § 113(g)(2) and 28 U.S.C. § 2201)**

41. Red incorporates the allegations in the preceding paragraphs by reference, as if set forth herein at length.

42. Red will continue to incur response costs in the future with respect to the environmental contamination at the Site.

43. An actual and justiciable controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 exists between Red and the Defendants concerning their respective obligations and potential liability for response costs already incurred and to be incurred in the future as a result of the release and threatened release of hazardous substances at the Site.

44. The Court should allocate the response costs incurred and to be incurred by Red among the Defendants, as current owners and operators of the Site, as current or former owners and operators of facilities, or as "arrangers" at the Site, using such equitable factors as the Court determines are appropriate, under 42 U.S.C. § 9613(f)(1), and grant appropriate declaratory relief under 42 U.S.C. § 9613(g)(2) and 28 U.S.C. § 2201.

45. Pursuant to Section 113(g) of CERCLA, 42 U.S.C. § 9613(g), and 28 U.S.C. § 2201, Red demands a declaratory judgment that the Defendants are liable for contribution for their equitable share of future response costs or damages, which judgment will be binding in any subsequent action to recover further response costs or damages at the Site.

## COUNT THREE
**(Private Nuisance)**

46. Red incorporates the allegations in the preceding paragraphs by reference, as if set forth herein at length.

10

47. In their ownership and/or operation of the Site, or in arranging for the transport of hazardous substances to or from the Site, the Defendants disposed of, or released hazardous substances in, at or under the Site, which impacted the Site.

48. Such release, disposal and/or impact by the Defendants created a private nuisance in that by the Defendants acts or omissions, or the acts or omissions of their agents or employees, have caused an unreasonable and substantial interference with Red's right to use and enjoy the Site.

49. The Defendants' conduct was a substantial factor in creating or maintaining the nuisance.

50. The Defendants failed to meet their legal and statutory obligations and maintained, created, or assisted in creating, the nuisance and contributed as a substantial factor in causing the alleged nuisance.

51. Defendants, by reason of this private nuisance, are liable for all of the damages to Red proximately caused by the contamination, and investigation, remediation, cleanup, and removal of, and response to the contamination.

## COUNT FOUR
**(Breach of Lease Against American Two Inc.)**

52. Red incorporates the allegations in the preceding paragraphs by reference, as if set forth herein at length.

53. ATC signed a lease with Gray's predecessor in title, which lease inured to the benefit of Gray and thus to the benefit of Red.

54. The lease required compliance by ATC with all laws.

55. In its operation of the Site, or in arranging for the transport of hazardous substances to or from the Site, ATC disposed of, or released hazardous substances in, at or under the Site, hazardous substances which impacted the Site in violation of the lease.

56. The lease requires that ATC pay all costs thereof and defend, indemnify and hold harmless Red (as successor in title) associated with such violations of law.

57. Red demands judgment against ATC for breach of the lease.

## COUNT FIVE
### (Violation of ECL Article 27)

58. Red incorporates the allegations in the preceding paragraphs by reference, as if set forth herein at length.

59. Some or all of the Contaminants are classified as hazardous wastes, pursuant to ECL Article 27, and hazardous substances, pursuant to ECL Article 37

60. Defendants released the contaminants at or from the Site in contravention of rules and regulations promulgated pursuant to the ECL, including ECL Article 27.

61. Pursuant to ECL Article 37, Defendants are strictly liable for all of the damages to Red proximately caused by the contamination, and investigation, remediation, cleanup, and removal of, and response, to the contamination.

## COUNT SIX
### (Negligence)

62. Red incorporates the allegations in the preceding paragraphs by reference, as if set forth herein at length.

63. Defendants, including their officers, agents, servants, employees, and/or predecessors, owed a duty of care to Red with regard to their use or operation of the Site.

64. Defendants, including their officers, agents, servants, employees, and/or predecessors, acted unreasonably and negligently in causing the release(s) and the contamination, or failing to take reasonable precautions necessary to avoid the release(s) and the contamination, and those acts and omissions were the direct and proximate cause of the damages to Red.

65. Defendants by reason of this negligence are liable for all of the damages to Red, including damages to the Site, proximately caused by the contamination, and investigation, remediation, cleanup, and removal of, and response to the contamination.

## COUNT SEVEN
### (Strict Liability)

66. Red incorporates the allegations in the preceding paragraphs by reference, as if set forth herein at length.

67. The generation, disposal, and management of Hazardous Substances is an abnormally hazardous activity.

68. Defendants have engaged in generation, disposal, and/or management of Hazardous Substances at the Property.

69. Defendants, by engaging in abnormally hazardous activities, are strictly liable without regard to fault for all of the damages to Red, including damages to the Site proximately caused by the contamination, and investigation, remediation, cleanup, and removal of, and response to the contamination.

## COUNT EIGHT
### (Waste)

70. Red incorporates the allegations in the preceding paragraphs by reference, as if set forth herein at length.

71. During the term of the lease, occupancy, and/or use of the Site, the Defendants caused waste of the Site by releasing, discharging, and/or arranging for same, of hazardous substances at the Site and by failing to cleanup and remove the contamination.

72. Defendants, by reason of their waste of the Site, are liable for all the damages to Red, including damages to the Site proximately caused by the contamination, and investigation, remediation, cleanup, and removal of, and response to the contamination.

## COUNT NINE
### (Equitable or Implied Indemnification)

73. Red incorporates the allegations in the preceding paragraphs by reference, as if set forth herein at length.

74. Defendants, including their officers, agents, servants, employees, and/or predecessors, had a non-delegable duty to Red to prevent, clean up or ensure against the Contamination of the Site.

75. As a result of the breach of this duty by Defendants, including their officers, agents, servants, employees, and/or predecessors, Defendants are responsible for Red's past and future expenses and damages in investigation, remediation, cleanup, and removal of, and response to, the contamination, and as a result, Defendants should, in equity, indemnify Red for some or all of its expenses, costs, and damages, to the extent not recoverable under CERCLA.

## COUNT TEN
### (Restitution)

76. Red incorporates the allegations in the preceding paragraphs by reference, as if set forth herein at length.

77. It would be against equity and good conscience to permit Defendants to pass the burden of cleaning up the contamination to Red.

78. Therefore, Defendants should make restitution to Red for Red's expenses, costs, and damages, to the extent not recoverable under CERCLA.

**WHEREFORE**, Red asks the Court to enter judgment in favor of Red, and against the Defendants, as follows:

A. For contribution under 42 U.S.C. § 9607(f) to response costs incurred, in an amount to be determined;

B. For partial or total contribution or indemnity, as permitted by law;

C. For litigation expenses and costs, including reasonable attorneys' fees and expert fees, as permitted by law; and

D. For an award of interest at the maximum legal rate on any and all damages from the earliest date permitted by law.

**WHEREFORE**, in addition, Red requests that the Court issue a declaratory judgment, pursuant to Section 113(g) of CERCLA, 42 U.S.C. § 9613(g), or 28 U.S.C. § 2201, that the Defendants are each liable in contribution for their equitable share of future response costs or damages, which judgment will be binding in any subsequent action to recover further response costs or damages at the Site.

**WHEREFORE**, in addition, Red requests that the Court enter judgment in favor of Red by reason of this private nuisance, adjudging that Defendants are liable for all of the damages to Red proximately caused by the contamination, and investigation, remediation, cleanup, and removal of, and response to the contamination.

**WHEREFORE**, in addition, Red requests that the Court enter judgment in favor of Red by reason of ATC's breach of the lease and adjudging ATC responsible to pay all costs of investigation, remediation and removal, and to indemnify and hold harmless Red (as successor in

title) associated with such breaches, including, but not limited to, all costs and expenses this suit, including, but not limited to, Red's attorneys' fees.

**WHEREFORE**, in addition, Red requests that the Court enter judgment in favor of Red pursuant to ECL Article 37, adjudging that Defendants are strictly liable for all of the damages to Red proximately caused by the contamination, and investigation, remediation, cleanup, and removal of, and response, to the contamination.

**WHEREFORE**, in addition, Red requests that the Court enter judgment in favor of Red by reason of Defendants' negligence and that Defendants are liable for all of the damages to Red, including damages to the Site, proximately caused by the contamination, and investigation, remediation, cleanup, and removal of, and response to the contamination.

**WHEREFORE**, in addition, Red requests that the Court enter judgment in favor of Red by reason of Defendants having engaged in abnormally hazardous activities, and that Defendants are strictly liable without regard to fault for all of the damages to Red, including damages to the Site proximately caused by the contamination, and investigation, remediation, cleanup, and removal of, and response to the contamination.

**WHEREFORE**, in addition, Red requests that the Court enter judgment in favor of Red by reason of Defendants' waste of the Site, and that Defendants are liable for all the damages to Red, including damages to the Site proximately caused by the contamination, and investigation, remediation, cleanup, and removal of, and response to the contamination.

**WHEREFORE**, in addition, Red requests that the Court enter judgment in favor of Red that Defendants are responsible for Red's past and future expenses and damages in investigation, remediation, cleanup, and removal of, and response to, the contamination, and as a result, Defendants

should, in equity, indemnify Red for some or all of its expenses, costs, and damages, to the extent not recoverable under CERCLA.

**WHEREFORE**, in addition, Red requests that the Court enter judgment in favor of Red that Defendants should make restitution to Red for Red's expenses, costs, and damages, to the extent not recoverable under CERCLA.

Date:  August 29, 2024

Respectfully submitted,

*/s/ Ronald Steinvurzel, Esq.*
Steinvurzel & Levy Law Group
Attorneys for Plaintiff
34 S. Broadway, Suite 210
White Plains, NY 10601
P:  (914) 288-0102
E:  rsteinvurzel@steinlevy.com

17